UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALLEGHENY PLANT SERVICES, INC., | Civ. No. 14-4265 (KM) |
| Plaintiff, | OPINION |
| v. | |
| CAROLINA CASUALTY INSURANCE COMPANY; THE LAW OFFICES OF FLOYD G. COTTRELL, P.A., | |
| Defendants. | |
| THE LAW OFFICES OF FLOYD G. COTTRELL, P.A., n/k/a Cottrell, Solensky & Semple, P.A. | |
| Third-Party Plaintiff, | |
| v. | |
| WELLS FARGO INSURANCE SERVICES USA, INC., | |
| Third-Party Defendant. | |

**KEVIN MCNULTY, U.S.D.J.:**

**Introduction**

This action grows out of a state court motor vehicle collision action against Allegheny Plant Services, Inc. ("Allegheny"). Allegheny, plaintiff here, sues its insurer, Carolina Casualty Insurance Company ("Carolina"). Carolina, says Allegheny, allowed a verdict that exceeded the limits of Allegheny's general liability policy. Allegheny asserts against Carolina claims of breach of fiduciary duty (Count 1), breach of contract (Count 2), and bad faith under 42

1

Pennsylvania Cons. Stat. § 8371 (Count 3). Allegheny also sues the attorney that handled the personal injury case, the Law Offices of Floyd G. Cottrell, n/k/a Cottrell, Solensky & Semple, P.A. ("Cottrell") for breach of fiduciary duty and professional negligence. Cottrell has filed a third-party claim for contribution against Wells Fargo Insurance Services USA, Inc. ("Wells Fargo").

Now before the Court are two motions:

(a) the motion (ECF no. 78) of defendant Carolina for partial summary judgment dismissing Count 3 of the Amended Complaint ("AC", ECF no. 14); and

(b) the motion (ECF no. 90) of Third-Party Defendant Wells Fargo to dismiss the Third-Party Complaint ("3PC", ECF no. 75) filed by Cottrell.

For the reasons expressed herein, both motions will be denied.

**Background**

Allegheny, a Pennsylvania motor carrier, obtained a policy of commercial transportation insurance from Carolina, a Florida insurer. On January 18, 2007, Robert Whitmore, an Allegheny employee, was involved in a collision in Maywood, New Jersey. The other vehicle involved was driven by Robert Curley; Curley's passenger was named Louis Capurso.

Curley sued Allegheny in Superior Court, Essex County, New Jersey. *Curley v. Allegheny Plant Services,* Docket No. L-7721-08 (the "Curley Lawsuit"). Carolina retained Cottrell, a law firm located in Newark, New Jersey, to defend the Curley Lawsuit. The jury returned a verdict of $1,440,000. That turned out to be $673,162.21 in excess of Allegheny's remaining policy limit.

Allegheny brought this action in the Western District of Pennsylvania. (Venue was transferred here.) Allegheny alleges that Carolina did not inform it of Curley's claims or multiple demands for settlement which, if accepted, would have settled the lawsuit within the policy limits. Allegheny alleges that Cottrell's substandard performance also caused it to be incur liability beyond the policy limits.

Cottrell has brought a third party claim against Wells Fargo. Cottrell does not acknowledge liability, but alleges that, if he is liable, Wells Fargo is

liable for contribution. According to Cottrell's Third Party Complaint, Wells Fargo is an insurance broker that also provides its clients with risk management services, claims assistance, and claims analysis. (3PC ¶ 6) On behalf of Carolina, Wells Fargo monitored and rendered services as to the Curley claim and trial. (3PC ¶¶ 14–19) Wells Fargo, which knew the claims exceeded the policy limits, allegedly had a duty to manage the claim prudently, but failed to do so, thus contributing to the loss for which Allegheny sues. (3PC ¶¶ 25–36)

## I. CAROLINA CASUALTY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that

3

creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

In deciding a motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992).

### B. Analysis

On this motion for partial summary judgment, Carolina makes one simple contention: Count 3, asserted under a Pennsylvania insurer bad faith statute, 42 Pa. Cons. Stat. § 8371, must be dismissed because New Jersey, not Pennsylvania, law applies. Finding that these two states' laws present no true conflict, I will deny the motion.

#### 1. Applicable choice of law standard

"[I]n a diversity action, a district court must apply the choice of law rules of the forum state to determine what law will govern the substantive issues of a case." *Warriner v. Stanton*, 475 F.3d 497, 499-500 (3d Cir. 2007) (citing *Klaxon*

4

*Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). The "forum state," however, has a particular meaning when venue has been transferred from another district. In such a case, the transferee court must apply the choice of law rules of the transferor district. *Ferens v. John Deere Co.*, 494 U.S. 516, 110 S. Ct. 1274 (1990); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S, Ct, 252 (1981). The overarching policy is that a change of venue is just a change of courtrooms that should not alter the substantive law governing the case, whether directly or *via* a change of choice of law rules.

This action was originally filed in the Western District of Pennsylvania. By so-ordered Stipulation, the action was transferred to this District. (ECF nos. 44, 45) I must therefore apply Pennsylvania's choice of law principles to determine whose law applies to the Allegheny's bad faith claim.

> The Pennsylvania Supreme Court's leading choice of law decision is *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964). *See Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir. 1991). In *Griffith* the court abandoned the traditional *lex loci delicti* conflicts rule for "a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." *Griffith*, 203 A.2d at 805. In commenting on the development of Pennsylvania's flexible rule, we have indicated:
>
>> this new conflicts methodology has evolved into a hybrid approach that 'combines the approaches of both Restatement II (contacts establishing significant relationships) and "interest analysis" (qualitative appraisal of the relevant States' policies with respect to the controversy).'
>
> *Lacey*, 932 F.2d at 187 (quoting *Melville v. American Home Assurance Co.*, 584 F.2d 1306, 1311 (3d Cir.1978)).
>
> The Pennsylvania Supreme Court has not rendered any opinion after *Lacey* impugning the validity of *Lacey's* exposition of Pennsylvania's flexible choice of law rule. Moreover, the Pennsylvania Supreme Court has summarized succinctly its major choice of law rules as follows:
>
>> (1) This Court in *Griffith v. United Air Lines, Inc.*, held that in resolving a potential conflict between the application of state laws we must consider the policies and interest underlying the particular issue before the court. *Id.* at 21, 203 A.2d at 805.

5

> (2) As further explained in *McSwain v. McSwain,* 420 Pa. 86, 215 A.2d 677 (1966), we must analyze ... the extent to which one state rather than another has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law.
>
> (3) Furthermore, in evaluating the interests of one jurisdiction over another, we must view the factors qualitatively as opposed to quantitatively, *Cipolla v. Shaposko,* 439 Pa. 563, 267 A.2d 854 (1970).
>
> *Myers v. Commercial Union Assurance Companies,* 506 Pa. 492, 485 A.2d 1113, 1115 (1984).

*Carrick v. Zurich-Am. Ins. Grp.,* 14 F.3d 907, 909-10 (3d Cir. 1994) (footnote omitted).[1] Although first developed in the tort context, Pennsylvania's hybrid "interests/contacts" approach has been extended to contracts, including contracts of insurance. *Hammersmith v. TIG Ins. Co.,* 480 F.3d 220, 227–28 (3d Cir. 2007).

The threshold issue is whether the two states' laws differ in any way that matters. If they do clash, the court must determine whether that clash presents a "false conflict," *i.e.,* one in which only one state's interests would be impaired by application of the other's law. If there is a true conflict, then the court must undertake the choice-of-law analysis and apply the law of the state with the "most significant contacts or relationships with the particular issue." *Hammersmith,* 480 F.3d at 229–30.

---

[1] Carolina cites New Jersey's choice of law rules, and makes much of the supposed difference. But the leading New Jersey case cited by Carolina, like the Pennsylvania cases, more or less straddles the divide between the "state interests" and the Restatement "significant relationship" approach. *P.V. v. Camp Jaycee,* 962 A.2d 453, 455 (N.J. 2008) ("although we have traditionally denominated our conflicts approach as a flexible 'governmental interest' analysis, we have continuously resorted to the *Restatement (Second) of Conflict of Laws (1971)* in resolving conflict disputes arising out of tort....That approach is the 'most significant relationship' test.") As *P.V.* put it, the most significant relationship approach "embodies all of the elements of the governmental interest test plus a series of other factors deemed worthy of consideration." 962 A.2d at 459 n.4.

6

### 1. True conflict

Count 3 is asserted under 42 Pa. Cons. Stat. § 8371, a Pennsylvania statutory cause of action for insurer bad faith. That statute, says Carolina, conflicts in certain respects with a New Jersey cause of action for insurer bad faith. Carolina suggests two distinctions: one as to the substantive standard of bad faith, and the other as to punitive damages.

### a. Comparison of standards of bad faith

Pennsylvania's § 8371 statutory claim has two essential elements: "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." *Klinger v. State Farm Mut. Automobile Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997); *accord Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005).

A Pennsylvania Superior Court decision, *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680 (Pa. Super. Ct. 1994), suggests that, in addition, the insurer must have had some ill motive:

> For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Id.* at 688 (quoting Black's Law Dictionary 139 (6th ed. 1990)). *Klinger*, however, quoted and rejected this *Terletsky* formulation as extraneous dictum. *Klinger* held squarely that the two-part test applies, and that there is no third requirement of an improper subjective purpose, such as ill will or self-interest. 115 F.3d at 233; *see also McMahon v. Med. Protective Co.*, 92 F. Supp. 3d 367, 389 n.13 (W.D. Pa. 2015) ("The presence of an improper motive, however, is not an element of a statutory bad faith claim under Pennsylvania law.").[2]

---

[2] It must be said, however, that cases continue to reproduce the quotation from *Terletsky* in conjunction with the *Klinger* two-part test, without explaining how they interact. *See, e.g., Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999) aff'd, 234 F.3d 1265 (3d Cir. 2000); *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1036 (Pa. Super. Ct. 1999). Others more clearly cite *Terletsky* as the source of the two-pronged standard, implicitly accepting that the rest was dictum. *See, e.g., Oehlmann v.*

7

In New Jersey, an insurer bad faith claim is a common law claim, not a statutory one. A cause of action for an insurance company's bad-faith refusal or delay of payment of a first-party claim was definitively recognized in *Pickett v. Lloyd's*, 621 A.2d 445, 452 (N.J. 1993).

*Pickett* holds that the insured has a "bad faith" cause of action where the insurer knew or was recklessly indifference to the absence of a reasonable basis to deny a claim:

"If a claim is 'fairly debatable,' no liability in tort will arise." ...:

> "To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one. * * * implicit in that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless * * * indifference to facts or to proofs submitted by the insured."

*Id.* (internal citations omitted). *See also Badiali v. New Jersey Mfrs. Ins. Grp.*, 107 A.3d 1281, 1286 (N.J. 2015) (negligence not sufficient).

That sounds, and is, identical to the two-part Pennsylvania standard as articulated in *Klinger*: lack of a reasonable basis for rejecting a claim, plus the insurer's knowledge or reckless disregard. True, *Klinger* does not use the words "fairly debatable." That, however, is just an alternative formulation of a "reasonable basis"; it is not essential.

*Pickett* specifically invoked as a comparison the Pennsylvania statute at issue here. Unlike the Third Circuit in *Klinger*, the *Pickett* court believed that Pennsylvania had adopted the *Terletsky* requirement of a subjective, dishonest purpose.[3] It made that observation in dictum, however; it was merely

---

*Metro. Life Ins. Co.*, 644 F. Supp. 2d 521, 531 (M.D. Pa. 2007) ("the two-prong *Terletsky* test").

[3] *Pickett* quoted, not *Terletsky*, but a very similar passage from a federal court case. 621 A.2d at 453 (quoting *Coyne v. Allstate Ins. Co.*, 771 F. Supp. 673, 677 (E.D. Pa. 1991) (which, like *Terletsky*, quoted *Black's Law Dictionary* 139 (6th ed. 1990)).

8

contrasting the Pennsylvania approach with its own. *Pickett* clearly and explicitly declined to adopt any requirement of an ill motive. *Id.* at 453.

The conflict perceived by the New Jersey Supreme Court was a false one; the two states' bad faith standards do not clash, as *Klinger* has made clear. *Klinger* is of course unstable precedent in the sense that it interprets state law and could be undermined by subsequent decisions of the Pennsylvania courts. But unless and until that happens, it is binding on me.

As to the standard of bad faith, I perceive no substantial conflict between the laws of Pennsylvania and New Jersey.

### b. Comparison of standards of punitive damages

I next examine whether New Jersey and Pennsylvania law conflict as to punitive damages. In general, punitive damages are available under each state's law. I see no substantial conflict as to the applicable standards, or as to the availability of such damages in an appropriate case.

New Jersey's *Pickett* case states that punitive damages are available in a bad faith case only in "egregious circumstances." They are not available as a matter of course, merely because a bad faith claim has been made out; something more than "a breach of the good-faith obligation" is required. *Id.* at 455.

In so holding, *Pickett* did not fashion a separate standard for punitive damages in a bad faith case, but cited general New Jersey punitive damages law:

> *See Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 49–50, 477 A.2d 1224 (1984) (finding that defendant's conduct must be wantonly reckless or malicious; wrongfulness of defendant's intentional act is critical).

*Pickett*, 621 A.2d at 455. The cited *Nappe* decision states familiar standards: "To warrant a punitive award, the defendant's conduct must have been wantonly reckless or malicious. There must be an intentional wrongdoing in

the sense of an 'evil-minded act' or an act accompanied by a wanton and wilful disregard of the rights of another." 477 A.2d at 1230.

New Jersey's general punitive damages statute likewise requires "clear and convincing evidence that the defendant's acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J. Stat. Ann. § 2A: 15-5.12(a). Actual malice is defined as "an intentional wrongdoing in the sense of an evil-minded act." N.J. Stat. Ann. § 2A:15-5.10. Wanton and willful disregard is defined as "a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission." *Id.*

Under the Pennsylvania bad faith statute, if bad faith is proven by clear and convincing evidence, the court may

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) **Award punitive damages against the insurer**.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. § 8371 (emphasis added). The burden of proof for all issues under the statute is "clear and convincing" evidence. *See Terletsky,* 649 A.2d at 688; *Bostick v. ITT Hartford Grp.,* 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999).

Pennsylvania would offer an advantage over New Jersey if it relaxed the standard for punitive damages, and permitted an award based solely on a violation of the bad faith statute. Does it?

The Pennsylvania statute does not clarify whether punitive damages are available based solely on a finding of bad faith. Nor, to add a little nuance, does it specify that punitive damages *may* be available, *if* the finding of bad faith happens to encompass the usual prerequisites for punitive damages, such as willful and wanton conduct.

10

Case 2:14-cv-04265-KM-JBC   Document 103   Filed 03/17/16   Page 11 of 15 PageID: 1811

The court's job, in a diversity case, is to predict what the state's highest court would do. That is what the Third Circuit attempted to do in *W.V. Realty, Inc. v. N. Ins. Co.*, 334 F.3d 306, 318 (3d Cir. 2003). There, it applied the usual Pennsylvania punitive damages standard, based on Restatement (Second) of Torts § 908. It upheld a bad faith verdict, but overturned punitive damages. In effect, *W.V.* held that there was nothing special about punitive damages in a Pennsylvania bad faith case.

In a nonprecedential case, the Third Circuit has recognized that subsequent Pennsylvania lower court cases may have undercut the reasoning of *W.V.*:

> The Superior Court of Pennsylvania has twice held "that a finding of bad faith permits an award of punitive damages 'without additional proof, subject to the trial court's exercise of discretion.'" *Zimmerman v. Harleysville Mut. Ins. Co.*, 860 A.2d 167, 174 (Pa. Super. Ct. 2004) (quoting *Hollock v. Erie Ins. Exch.*, 842 A.2d 409, 419 (Pa. Super. Ct. 2004)); *see also Thomas v. State Farm Ins. Co.*, 1999 WL 1018279, at *3 (E.D. Pa.1999) ("Reckless behavior sufficient to support a finding of bad faith under the *Terletsky* test is thus also sufficient to impose punitive damages." (citing *Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 751 (3d Cir.1994))). In *Polselli*, we found "reckless behavior can constitute bad faith" but did not find that a finding of bad faith is always sufficient to award punitive damages. 23 F.3d at 751.

*Jurinko v. Med. Protective Co.*, 305 F. App'x 13, 25 (3d Cir. 2008). *See also Smith v. Allstate Ins. Co.*, 912 F. Supp. 2d 242, 255 (W.D. Pa. 2012) ("[T]his Court predicts that the Supreme Court of Pennsylvania would interpret section 8371 to permit an award of punitive damages upon a finding of bad faith alone.")

I will, as I must, follow the precedential *W.V.* holding. I find it plausible that Pennsylvania would permit, if not require, a punitive damages award based on a bad faith verdict. Such a verdict, however, would have to carry within it the factual basis for a traditional award of punitive damages. Otherwise, punitive damages would be awarded in every bad faith case; if that

had been intended, I would have expected a much clearer legislative statement to that effect.

At any rate, such a conflict as to punitive damages—even if it existed—would not require me to dismiss Count 3, the relief sought here. "Because choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case, a principle known as 'depecage.'" *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) (interpreting Pennsylvania choice of law rules). Even a true conflict, which I do not find, would at most require that I relax the punitive damages standard, not dismiss the claim. As to that issue, should it arise at trial, I will entertain applications.

### c. No true conflict

For the reasons stated above, there is no substantial conflict at all between New Jersey and Pennsylvania law as to these issues. The court is thus free to default to the law of the forum (I mean the transferor forum, Pennsylvania), or to apply the two states' laws indifferently.[4]

Although it is not strictly necessary, in the alternative I briefly address the issue of whether any conflict, if it existed, would be a "true" one. I believe that it would not, because this is not a case where each state's interest would be affronted by the application of the other's law. There is no such thing as a one-sided conflict; in a "true" conflict, both states' interests must be implicated. Here, New Jersey's interest is not.

A true conflict may be presented when one state has adopted a "plaintiff-protecting rule" and the other has adopted a "defendant-protecting rule." *Hammersmith*, 480 F.3d at 230 (quoting *Cipolla v. Shaposka*, 439 Pa. 563, 267

---

[4] Under New Jersey's choice of law rules, the result would be the same. *See Maniscalco v. Brother Int'l Corp. (USA)*, 793 F. Supp. 2d 696, 704 (D.N.J. 2011) (where there is no actual conflict between the states' laws, the analysis ends and the court applies forum law) (citing *P.V. v. Camp Jaycee*, 197 N.J. 132, 143-44, 962 A.2d 453, 460 (2008)). The following "true" conflict analysis is more pertinent to the Pennsylvania choice of law approach.

A.2d 854, 846 (1970)). For example, the court in *Rosen v. Tesoro Petroleum Corp.*, 582 A.2d 27, 30–31 (Pa. Super. Ct. 1990), found a "true conflict" between the malicious prosecution laws of laws of Texas and Pennsylvania. There, however, Texas plaintiffs sought the benefit of a plaintiff-friendly Texas law which was intended to provide "open access to the judicial system"; Pennsylvania defendants sought the protection of a Pennsylvania law intended to shield persons "who may be forced to defend a baseless suit." *Id.*

No such configuration is presented here. The obvious policies behind either state's bad faith cause of action are to obtain compensation and fair treatment for insureds, and to impose high standards of professional conduct upon insurers. As to punitive damages in particular, the policy must be to punish irresponsible insurers and regulate their conduct.

The insured here is Allegheny, a Pennsylvania corporation which has been located in Pennsylvania since 1965. Pennsylvania has a clear interest in protecting Allegheny from overreaching conduct by an insurer. New Jersey has no direct interest in either helping or hindering Allegheny in its quest to shift liability to Carolina;[5] nor does it have any interest in regulating Carolina's conduct, unless there is a New Jersey insured, which is not the case here.

According to its Answer (ECF no. 18 at 2, ¶¶ 4, 5), Carolina "is an insurance company incorporated under the laws of the state of Iowa, that is authorized to issue insurance policies in the Commonwealth of Pennsylvania, and is so doing with its principal place of business located at 4600 Touchton Road, Jacksonville, Florida 32246." Pennsylvania's interest in protecting its insured coincides with its interest in regulating an insurer that operates within its borders. New Jersey, however, has no discernible interest in helping, hindering, or regulating Carolina, an out-of-state corporation. To the extent that, say, New Jersey's punitive damages law may be more protective of

---

[5] There is no claim by or on behalf of the injured New Jersey motorist in this case.

defendants, it does not matter. There is no New Jersey defendant in this case. There is no clash of interests, and no true conflict. So the court will defer to Pennsylvania, and its (for argument's sake) plaintiff-protecting rule.

Pennsylvania law applies. Carolina's motion to dismiss Count 3 is therefore denied.

## II. WELLS FARGO'S MOTION TO DISMISS THIRD PARTY COMPLAINT

Wells Fargo seeks to dismiss the Third Party Complaint brought against it by Cottrell. The motion will be denied.

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011).

From the seminal modern cases of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Third Circuit has extracted a three-step process for reviewing a complaint:

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to a state a claim for relief. See [*Iqbal*, 556 U.S.] at 675; *Argueta*, 643 F.3d at 73. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. See *Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

*Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Under Fed. R. Civ. P. 8, the complaint's allegations must be factual, not conclusory, and they must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

Based on the allegations summarized at pp. 2–3, *supra*, Cottrell seeks contribution under the New Jersey Joint Tortfeasors Contribution Law, N.J. Stat. Ann. § 2A:53A-1. That Act entitles a defendant against whom judgment has been entered in excess of his pro rata share to seek contribution from a joint tortfeasor. The key to a viable claim is "common liability to the plaintiff at the time the cause of action accrued." *Cherry Hill Manor Assocs. v. Faugno*, 861 A.2d 123, 127–28 (N.J. 2004) (joint liability distinguished from common or concurrent negligence).

The Third Party Complaint is therefore contingent in nature. It adequately sets forth a claim that Wells Fargo contributed to a unitary injury suffered by Allegheny. Wells Fargo interposes factual issues concerning its ability to control the defense, its contractual relations with Carolina, and other matters that cannot be disposed of on a motion to dismiss.

Wells Fargo's motion to dismiss the Third Party Complaint will therefore be denied.

### III.  CONCLUSION

For the reasons set forth above, Carolina Casualty's motion for partial summary judgment is DENIED.  Wells Fargo's motion to dismiss the Third-Party Complaint is DENIED. An appropriate Order follows.

Dated:  March 17, 2016

_____
HON. KEVIN MCNULTY, U.S.D.J.